**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PHILLIPE AYRES and | § | |
| KIMBERLY AYRES, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No.  SA-12-CV-621-XR |
| v. | § | |
| | § | |
| MS. PAT PARKER D/B/A FIRST REALTY | § | |
| OF KERRVILLE & D/B/A FANNIE MAE, | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION, and BANK OF | § | |
| AMERICA, N.A., | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this day the Court considered Plaintiffs' Motion for Summary Judgment and for Judgment on the Pleadings (Doc. No. 17) and Defendants' Motion for Summary Judgment (Doc. No. 19). For the following reasons, Plaintiffs' motion is DENIED and Defendants' motion is GRANTED.

**I. Background**

**A. Factual Background**

In September of 2005, Plaintiffs Phillipe Ayres and Kimberly Ayres obtained a mortgage loan from Countrywide Home Loans, Inc. for $125,625. Plaintiffs executed a Note and a Deed of Trust in connection with the transaction. The Deed of Trust encumbered property located at 2160 Bandera Highway, Kerrville, Texas (the "Property").

1

Defendant Bank of America, N.A. claims to currently be in possession of the Note, which was indorsed in blank by the original lender, Countrywide Home Loans, Inc. (Defs.' MSJ ¶ 9 & Ex. A-1.) An assignment of the Deed of Trust was executed by Mortgage Electronic Registration Systems, Inc. ("MERS") and recorded in the Official Public Records of Kerr County, Texas in December of 2011 (the "Assignment"). The Assignment purported to transfer MERS's beneficial interest in the Deed of Trust "together with the note(s)" to Bank of America. (Defs.' MSJ, Ex. A-3.)

Plaintiffs defaulted on their payment obligations under the Note in late 2010. (Pet. ¶ 16; Defs.' MSJ ¶ 10.) Bank of America sent Plaintiffs, via certified mail, a notice of default and intent to accelerate on February 25, 2011. (Defs.' MSJ, Ex. A-5.)

After they defaulted, Plaintiffs contacted Bank of America to inquire about a loan modification and relief being offered through various federal government programs. Plaintiffs allege they were given a 1-800 number to call but that "[e]ach time they called, they got a different story and a different loan representative who knew nothing of their loan." (Pet. ¶ 16.) As a result, Plaintiffs retained counsel "in an attempt to get meaningful written communication from Bank of America." (Pet. ¶ 17.) After Plaintiffs retained counsel, evidence in the record shows that the following events transpired.[1]

On May 31, 2011, Plaintiffs' counsel sent Bank of America a letter dated May 31, 2011, which stated in full the following:

> Enclosed please find our Trust Acct. check in the amount of $992.22 (requested minimum payment and unpaid portion of prior payment), along with an undated "Important Notice" my clients received from you, which is tendered in a good faith effort to convince you, Bank of America, ("you") that my clients, Phillipe and Kimberly Ayres, are making a good faith attempt to

---

[1] After all of the briefing was completed, Plaintiffs filed "Initial Rule 26 Disclosures" with the Court that

settle the disputes with you and bring the referenced loan acct. current. Your acceptance of the tendered payment will confirm your agreement to work in good faith with my clients in their attempt to settle the above referenced account.

Should you wish to accept the check and proceed in good faith we will require a written response from you designating the name and telephone number and extension of a duly authorized Bank Officer with authority and power to reach a settlement. My clients have advised me that of the $11,061.51 charges which you claim include over $5,000.00 of Attorney's fees for numerous correspondence over the past year threatening foreclosure, which was again threatened this month.

In an effort to save their homestead our clients have been able to raise $8,000.00 to bring the loan current provided you will waive $3500.00 of the claimed Attorney's fees and sign notarized legal documentation reinstating their loan and specifying the total of all sums owing to Bank of America for principle [sic] and interest and Attorney's fees.

Based on my prior dealings with you on behalf of my clients I must confirm their frustration with being <u>unable</u> to communicate directly and consistently with one human being with authority to deal with their loan. Last August my clients were assured they fit within the guidelines for a reduction of interest rate and restructuring of their loan, this still has not happened.

This is my clients['] final attempt at resolving this matter without litigation. I have already advised them that they would be better off using a portion of their escrowed funds for much more personally gratifying matters and the balance for Attorney's fees for a lawsuit against you to set aside any threatened or completed foreclosure sale of their homestead.

I trust that you fully understand my clients['] frustration in this matter and your duties under State and Federal Law. If I do not hear from you in writing within five (5) days from the date of this letter, I will proceed accordingly.

(Aff. of Phillipe Ayres, Ex. G.) Bank of America accepted the $992.22 payment in June of 2011. (*See* Defs.' MSJ, Ex. A-4.)

On June 1, 2011, Bank of America sent Plaintiffs a letter informing them that they had been approved for a trial period modification plan under the Fannie Mae Modification Program. (Defs.' MSJ, Ex. A-6.) The letter stated that Plaintiffs' mortgage would be permanently modified if they made three consecutive "Trial Period Plan payments" of $994.04.

3

On August 22, 2011, Bank of America sent Plaintiffs a letter informing them that their trial payments had been received and that the loan was under review for a modification. (Defs.' MSJ, Ex. A-7.) The August 22 letter also stated that Plaintiffs "should be receiving a permanent modification agreement in the mail within the next 30 days. Subsequently, the foreclosure sale date has been postponed to September 6, 2011 due to the modification review." (Defs.' MSJ, Ex. A-7.)

On October 19, 2011, Bank of America sent Plaintiffs a letter informing them that Bank of America mortgage counselors at a local Customer Assistance Center would speak with Plaintiffs in-person about the "next steps in the loan assistance process." (Aff. of Phillipe Ayres, Ex. I.) Plaintiffs subsequently received a letter dated October 27, 2011 informing them that Bank of America had assigned Elaine Petrey as their "dedicated customer relationship manager." (Aff. of Phillipe Ayres, Ex. J.) The October 27, 2011 letter provided in part the following:

> My name is Elaine Petrey and I've been assigned to you by Bank of America, N.A., your home loan servicer, as your dedicated customer relationship manager. Bank of America, N.A. has several programs designed to help homeowners who are having trouble making their monthly mortgage payment, and it's possible that one could help you.
>
> Together, we can review your individual situation and determine which of our programs may be available to you.
>
> Call me at 1-800-[XXX-XXXX] to discuss programs that may help you avoid a foreclosure sale of your property.
>
> We will discuss where you are in the loan assistance process, where you've been and what some possible outcomes are. I'll be with you the entire time, and you will get continuous status updates from me.
>
> Please note that during this time, you may see some references to foreclosure in communications you receive from us, and it's critical that you continue to read and respond to, if requested, all communications from us regarding your home loan.

(Aff. of Phillipe Ayres, Ex. J) (emphasis removed) (telephone number redacted).

On November 7, 2011, Bank of America sent Plaintiffs a proposed modification agreement. (Defs.' MSJ, Ex. A-8.) Plaintiffs did not accept the proposed agreement[2] and, as a result, no permanent modification agreement was ever consummated.

On February 7, 2012, Plaintiffs' counsel sent Bank of America a letter that stated in part:

> As reflected in the attached correspondence, my clients, Phillipe R. Ayres and wife, Kimberly Ayres have acted in good faith in their efforts to receive fair mortgage treatment. As you will see below, they have been given conflicting instructions on how to comply. Foreclosure on their home has been continuously threatened for the past eighteen months. Twice, they have been promised financing modifications which have been illusory or never sent.
> ….
> My clients are tired of their lives being put on hold by your inaction and the runaround. Your action and inaction has inflicted intense emotional distress on them. This was indicated to you in my letter of May 31, 2011, a copy of which is enclosed, along with my clients' June 20, 2011 authorization to communicate directly with me.
> In the words of Dr. Phil, "It's time to get real." Please have a real person with authority and a real call back number contact me in writing at your earliest convenience to avoid costly litigation, attorney fees, and actual and exemplary damages.

(Aff. of Phillipe Ayres, Ex. E.)

Also on February 7, 2012, Bank of America sent each Plaintiff, via certified mail return receipt requested, a notice of acceleration and trustee's sale. The notice indicated that the maturity date of the Note had been accelerated and that the Property had been scheduled to be sold by a substitute trustee at a foreclosure sale on March 6, 2012. (Defs.' MSJ, Exs. B ¶ 5

---

[2] In their briefing, Plaintiffs contend that the proposed modification agreement was unfavorable to them because it increased the interest rate from 4.25% to 5.0%, the monthly payment from $1041.16 to $1,047.42, and the loan term from approximately twenty-four remaining years to forty years. (Pls.' Reply ¶ 10(k).) The copy of the Note in the record indicates that Plaintiffs' loan had an initial interest rate of 5.5% that changed to an adjustable interest rate in November of 2008 and that Plaintiffs had approximately twenty-four years remaining on their loan when the proposed modification agreement was sent to them. (Defs.' MSJ, Ex. A-1.) Evidence in the record demonstrates that the proposed modification agreement offered a 5.0% fixed interest rate, a new monthly payment of $1,047.42, and a loan term of forty years. (Defs.' MSJ, Ex. A-8.)

& B-1.) On February 16, 2012, an Appointment of Substitute Trustee document was executed by an agent of Bank of America. (Pls.' Resp., App'x 2.)

On March 2, 2012, Plaintiffs' counsel sent Bank of America another letter that stated in part:

> [M]y clients remain under constant fear and threat of foreclosure on Tuesday, March 6, 2012.
>    If we have not received written communication confirming that the foreclosure is not going to occur as scheduled, we will have no alternative but to commence the litigation promised in our letter of February 7, 2012.
>    If you do intend to foreclose on Tuesday, March 6, 2012, please have the substitute trustee who is going to conduct the sale advise me by telephone and in writing when specifically he or she intends to conduct the sale, and what he or she looks like.

(Aff. of Phillipe Ayres, Ex. D) (internal parenthetical omitted).

On March 6, 2012, the Property was sold at a foreclosure sale to Bank of America for $129, 514.27. (*See* Defs.' MSJ, Ex. B-3.) The fair market value of the Property at the time of the sale was approximately $186,350. (*See* Defs.' MSJ, Ex. C.)

On March 8, 2012, two days after the sale took place, Bank of America sent Plaintiffs a letter that stated in its entirety: "This letter is to acknowledge receipt of your recent inquiry about your home loan. We are in the process of obtaining the documentation and information necessary to address your questions. We appreciate your patience while we research your request." (Aff. of Phillipe Ayres, Ex. C.)

On March 9, 2012, a notice was posted on the front door of the Property indicating that the Property was owned by Defendant Federal National Mortgage Association ("FNMA"). (Aff. of Phillipe Ayres ¶ 1 & Ex. A.) The notice indicated that the occupants should contact Pat Parker or Chad Parker, who were listed as the real estate agents that had

been assigned to manage the Property, to discuss occupancy status. (Aff. of Phillipe Ayres, Ex. A.)

On March 15, 2012, Bank of America sent each Plaintiff a notice of rescission of acceleration of loan maturity (sometimes referred to herein as the "rescission notice"). The rescission notice stated:

> Mortgagee under the Deed of Trust referenced below hereby rescinds the notice of acceleration dated 09/08/11 and all prior notices of acceleration. This Rescission of Acceleration does not waive or suspend the rights, interests or claims of Mortgagee, its successor or assigns, to accelerate and collect in the future the debt owned by Borrower.

(Aff. of Phillipe Ayres, Ex. F.) Notably, this rescission notice did not rescind the February 7, 2012 notice of acceleration and trustee's sale.

On March 22, 2012, Plaintiffs' counsel sent Pat Parker a letter that stated:

> I understand that on or about March 8, 2012 you posted a Notice on the referenced property advising that the property is owned by [FNMA] and that the occupants should discuss the status of their occupancy with you or Chad Parker, Realtor. I am contacting you as attorney for Phillipe and Kimberly Ayers and ask that you or your employer [FNMA] provide the following information immediately.
>
> 1. The name, address, phone number and fax number of your [FNMA] supervisor.
>
> 2. A copy of all documents, especially a deed to [FNMA], upon which your claim that they own the property is based.
>
> Pending receipt of the requested information from you, I must demand that you, your agents and employees CEASE AND DESIST from going on the property or interfering with the present tenants' occupancy of the property.

(Aff. of Phillipe Ayres, Ex. B.)

On April 11, 2012, a special warranty deed was executed that conveyed the Property from Bank of America to FNMA. (Pls.' MSJ, App'x 1, Ex. E.)[3]

On April 27, 2012, a notice was again posted on the front door of the Property indicating that the Property was owned by FNMA and directing the occupants to contact Pat Parker or Chad Parker to discuss occupancy status. (Aff. of Phillipe Ayres ¶ 1 & Ex. A.)

To date, it appears that Plaintiffs have continued to reside on the Property. (*See* Pls.' Resp. ¶ 5.)

**B. Procedural Background**

On May 11, 2012, Plaintiffs filed their Original Petition and Application for Temporary Restraining Order and Temporary Injunction in state court and Defendants removed the action to this Court based on diversity jurisdiction.[4]

The Original Petition, which remains the live pleading, alleges the following causes of action: (1) deceptive trade practices under the Texas Deceptive Trade Practices—Consumer Protection Act, (2) common law fraud, (3) fraud in a real estate transaction, (4) negligent misrepresentation, (5) negligent hiring, supervision, and management, (6) intentional infliction of emotional distress, (7) "setting aside of flawed trustee's sale," and (8) breach of the duty of good faith and fair dealing. Plaintiffs seek a judgment setting aside the substitute trustee's sale of the Property, an award of economic damages including moving expenses, damage to the Property and diminished market value of the Property, an award of multiple and exemplary damages, and attorney's fees.

---

[3] Although the special warranty deed was dated March 14, 2012, the deed does not appear to have been executed until April 11, 2012.

[4] The Court found that there was complete diversity because the non-diverse Defendant, Pat Parker, was improperly joined. (*See* Order Denying Mot. to Remand, Doc. No. 11.) Defendant Parker was subsequently dismissed pursuant to her unopposed motion to dismiss. (*See* Order Granting Mot. to Dismiss, Doc. No. 14.)

Defendants Bank of America and FNMA jointly filed a motion for summary judgment seeking summary judgment on each of Plaintiffs' causes of action. Plaintiffs filed a response to the motion and Defendants filed a reply.

Plaintiffs filed a motion for summary judgment and for judgment on the pleadings[5] in which they request that the Court grant summary judgment on liability, set aside the foreclosure sale, and set a hearing on damages. Plaintiffs' motion appears to only address their causes of action to set aside the trustee's deed, for breach of the duty of good faith and fair dealing, and for negligent hiring, supervision, and management. Defendants filed a response to the motion and Plaintiffs filed a reply.

## II. Legal Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a

---

[5] For brevity, the Court will refer to Plaintiffs' motion simply as their motion for summary judgment.

scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. Discussion

**A. Claim to Set Aside the Trustee's Sale**

In their petition, Plaintiffs assert a cause of action to set aside the March 6, 2012 trustee's sale. (Pet. ¶ 38.) Throughout their motion for summary judgment and briefs, Plaintiffs assert that the sale should be set aside because: (1) there were several irregularities in the foreclosure proceedings, (2) there was a "fatal flaw" regarding compliance with section 51.002(d) of the Texas Property Code, and (3) there is "questionable ownership" of the Note and Deed of Trust. (*See* Pls.' MSJ ¶¶ 10-16; Pls.' Reply ¶¶ 7-9; Pls.' Resp. ¶¶ 8-10.) The Court will address each argument in turn.

### <u>1. Whether the Alleged Irregularities in the Foreclosure Proceedings Are Sufficient Grounds to Set Aside the Sale</u>

For a trustee's sale to be set aside, "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975).

Plaintiffs allege that there were numerous irregularities with the foreclosure proceedings that had a "chilling effect" on the sale. Throughout their petition, motion for summary judgment, and briefing, Plaintiffs point to the following irregularities: (1) that Bank of America allegedly posted the Property for sale multiple times before the Property was ultimately sold at the March 6, 2012 foreclosure sale; (2) that Plaintiffs were unable to

communicate directly and consistently with a single Bank of America representative who had authority to make decisions regarding their loan; (3) that Bank of America did not timely and sufficiently respond to Plaintiffs' counsel's March 2, 2012 letter that requested information concerning the sale; (4) that the February 7, 2012 notice of trustee's sale indicated that the Property would be sold by a substitute trustee who had not yet been appointed; (5) that Bank of America's March 8, 2012 letter to Plaintiffs suggests "that the bank officer [whom Plaintiffs believed was in charge of their loan] was not aware that the alleged sale had been conducted or was even scheduled to be conducted";[6] and (6) that the March 15, 2012 notice of rescission of acceleration of loan maturity invalidated the sale. After careful consideration, the Court finds that these irregularities do not constitute grounds to set aside the trustee's sale because Plaintiffs have not demonstrated that any of these irregularities caused the Property to be sold for a grossly inadequate selling price.

### a. No Evidence that the Irregularities Caused, or Contributed to Cause, the Property to Be Sold for an Inadequate Price

In their petition and motion for summary judgment, Plaintiffs assert that Bank of America posted the Property for sale multiple times before the Property was ultimately sold at the March 6, 2012 foreclosure sale. (Pet. ¶ 16; Pls.' MSJ ¶ 13.) However, Plaintiffs have not provided any evidence that the Property was posted for sale multiple times, nor is the Court aware of any such evidence in the record.[7] Furthermore, Plaintiffs have not adduced any

---

[6] *See* Pls.' Resp. ¶ 10(iv).

[7] The Court recognizes that there is some indication that the Property may have been scheduled to be sold on more than one occasion. For example, Bank of America's August 22, 2011 letter to Plaintiffs stated that "the foreclosure sale date has been postponed to September 6, 2011 due to this modification review," Plaintiffs' counsel's February 7, 2012 letter to Bank of America related that "[f]oreclosure on [Plaintiffs'] home has been continuously threatened for the past eighteen months," and Phillipe Ayres states in his affidavit that "[f]oreclosure of [the Property] has been threatened for the past 18 to 20 months." (Aff. of Phillipe Ayres ¶ 8.) However, the Court is not aware of any evidence that the Property was actually "posted" for sale more than once

11

evidence demonstrating how the alleged multiple postings caused the Property to be sold for an inadequate price.

Throughout their petition and briefs, Plaintiffs also complain that they were unable to communicate directly and consistently with a single Bank of America representative who had authority to make decisions regarding their loan and that Bank of America did not sufficiently respond to several written letters sent by Plaintiffs' counsel. However, Plaintiffs have not provided any authority to suggest that Bank of America's failure to acceptably correspond with them or their attorney constitutes a foreclosure-proceeding-defect under Texas law, nor have Plaintiffs provided any evidence demonstrating how Bank of America's failure to more acceptably correspond with them caused the Property to be sold for an inadequate price. Similarly, to the extent Plaintiffs argue that Bank of America's March 8, 2012 letter shows that the bank officer in charge of their loan was not aware that the foreclosure sale had been scheduled or conducted, that fact, even if it constituted an irregularity in the foreclosure proceedings, would not support a claim to set aside the trustee's deed in this case because Plaintiffs have not produced any evidence demonstrating that the loan officer's lack of knowledge contributed to an inadequate selling price of the Property.

In their response to Defendants' motion for summary judgment, Plaintiffs appear to complain that the February 7, 2012 notice of trustee's sale indicated that the Property would be sold by a substitute trustee even though an Appointment of Substitute Trustee document was not executed until February 16, 2012. (*See* Pls.' Resp. ¶ 10(ii).) However, Plaintiffs' complaint does not support a claim to set aside the sale for at least two reasons. First, the

---

and the record does not contain any notices of acceleration and trustee's sale other than the notice that was sent to each Plaintiff on February 7, 2012.

notice of sale was not inaccurate. The record shows, and Plaintiffs do not dispute, that one of the substitute trustees named in the February 7 notice of sale was the individual who eventually conducted the sale.[8] Plaintiffs do not cite any authority for their position that a notice of trustee's sale can constitute a foreclosure-proceeding-irregularity simply because the notice indicates the name of a substitute trustee who has yet to be officially appointed. Second, Plaintiffs do not provide any evidence demonstrating that the alleged irregularity with the notice of trustee's sale had any impact on the selling price.

Plaintiffs also point out that Bank of America sent them a notice of rescission of acceleration of loan maturity several days after the foreclosure sale. Plaintiffs contend that, as a result of the rescission notice, "the foreclosure was made void or voidable because the obligations secured by the deed of trust were not matured." (Pet. ¶ 38(d).) Plaintiffs provide no authority for their contention that the rescission of an acceleration notice after a foreclosure sale has occurred can void the sale and the Court is not aware of any such authority either. Furthermore, even if the withdrawal of an acceleration notice could retroactively invalidate a foreclosure sale, the rescission notice in this case would not affect the validity of the foreclosure sale because the plain language of the rescission notice is limited. Namely, the rescission notice only purports to rescind the "notice of acceleration dated 09/08/11 and all prior notices." Uncontroverted evidence in the record shows that Plaintiffs were each sent a notice of acceleration on February 7, 2012, well after September of 2011.

---

[8] The notice of sale, dated February 7, 2012, named the following "Substitute Trustees": "Rhonda Rambin, Troy Martin or Judy Shuckenbrock, Selim Taherzadeh, Kendall Yow or David Romness, any to act." (Defs.' MSJ, Ex. B-1.) The Appointment of Substitute Trustee document, executed on February 16, 2012, similarly appointed "Rhonda Rambin, Troy Martin or Judy Shuckenbrock, Selim Taherzadeh, Kendall Yow, David Romness or Lauren Godfrey, any to act, as Substitute Trustee." (Pls.' Resp., App'x 2.) The Trustee's Deed shows that Rhonda Rambin executed the Trustee's Deed as Substitute Trustee on March 6, 2012. (Defs.' MSJ, Ex. B-3.)

In sum, Plaintiffs have not produced competent summary judgment evidence demonstrating that any of the alleged irregularities contributed to the Property being sold for an inadequate price.

### b. The Property Was Not Sold for a Grossly Inadequate Price

Under Texas law, "a grossly inadequate price would have to be so little as 'to shock a correct mind.'" *Fed. Deposit Ins. Corp. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (quoting *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ)). The Fifth Circuit has recognized that, under Texas law, a selling price is not grossly inadequate if the property sells for at least 60% of its fair market value. *Id.* at 531-32 ("The weight of Texas authority rejects a determination of gross inadequacy where . . . property sells for over 60% of fair market value and precedent exists for disregarding a jury finding to the contrary.").[9]

Here, it is undisputed that the selling price was roughly 70% of the Property's fair market value.[10] Accordingly, the Property was not sold for a grossly inadequate selling price as a matter of Texas law.

### 2. Whether Bank of America Failed to Comply with Section 51.002(d) of the Texas Property Code

In Texas, a foreclosure sale may be set aside as invalid if notice under section 51.002 is not properly and timely served. *See Rodriguez v. U.S. Bank, N.A.*, No. SA-12-CV-345-XR, 2013 WL 3146844, at *8 (W.D. Tex. June 18, 2013) (collecting cases). Here, Plaintiffs

---

[9] Indeed, some authority suggests that the selling price must be much lower than 60% of the fair market value in order to support a finding of gross inadequacy. *See Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 509 F. App'x 367, 369 (5th Cir. 2013) ("Texas cases establish that a foreclosure price exceeding 50% is not grossly inadequate."); *Blanton*, 918 F.2d at 531 n.7 (declining to promote a mechanical application of a "60% test" and recognizing that "[c]ases with a finding of gross inadequacy typically fall far below the 60% line").

[10] The Property was sold for $129,514.27 at the foreclosure sale and Plaintiffs do not dispute that the fair market value of the Property at the time of the sale was approximately $186,350. (*See* Defs.' MSJ, Exs. B-3 and C; Pls.' Resp. ¶ 10.)

contend that Bank of America did not comply with section 51.002(d) of the Texas Property Code[11] because the only evidence of compliance with section 51.002(d) is a notice dated February 25, 2011 that was sent more than one year prior to the March 6, 2012 foreclosure sale and because Bank of America has not presented any evidence that the notice was sent by certified mail. (*See* Pls.' Resp. ¶ 8; Pls.' Reply ¶ 7.) Both arguments lack merit.

Plaintiffs contend that the February 25, 2011 notice of intent to accelerate does not satisfy section 51.002(d) because the notice was sent more than a year prior to the March 6, 2012 foreclosure sale. Plaintiffs support their argument by urging that, after the notice was sent, numerous communications between the parties took place, Plaintiffs made several payments on their loan,[12] and a loan modification agreement was offered and withdrawn.[13] However, Plaintiffs provide no authority for their contention that a notice sent under 51.002(d) somehow becomes ineffective or invalid if too much time elapses between service of the notice and the foreclosure sale or if intervening events transpire. The plain language of section 51.002(d) does not support Plaintiffs' argument and federal case law is contrary to their position. *See Perales v. Wells Fargo Bank, N.A.*, No. SA:12-CV-515-DAE, 2013 WL 3456998, at *5-6 (W.D. Tex. July 9, 2013) (rejecting the argument that a mortgagee was

---

[11] Section 51.002(d) of the Texas Property Code provides:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

[12] Plaintiffs do not contend, and evidence does not suggest, that Plaintiffs' payments cured their default.

[13] Additionally, Plaintiffs occasionally appear to argue that the rescission notice retroactively invalidated Bank of America's compliance with section 51.002(d). However, this argument is misplaced because the rescission notice only purported to rescind certain notices of acceleration and section 51.002(d) does not govern notices of acceleration.

required to reissue notices under 51.002 following the rejection of a loan modification application); *Milton v. U.S. Bank Nat'l Ass'n*, No. 4:10-CV-538, 2012 WL 1969935, at *2-3 (E.D. Tex. May 31, 2012), *aff'd*, 508 F. App'x 326 (5th Cir. 2013) (rejecting the argument that a mortgagee was required to reissue a notice of sale after a modification application was denied).

Plaintiffs also contend that the foreclosure sale should be set aside because Bank of America has not presented any evidence that the February 25, 2011 notice was sent by certified mail. However, contrary to Plaintiffs' argument, Bank of America *has* presented evidence that the notice was sent by certified mail. Specifically, Bank of America has produced the declaration of Jennefer Bartholomew, Assistant Vice President of Bank of America, in which she specifically states that Bank of America sent the February 25, 2011 notice of default to Plaintiffs "via certified mail." (Defs.' MSJ, Ex. A ¶ 9.) Ms. Bartholomew's statement constitutes prima facie evidence that service of the notice by certified mail was completed. *See* TEX. PROP. CODE § 51.002(e) ("The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service."). Plaintiffs have not provided any evidence controverting Ms. Bartholomew's statement. Accordingly, the Court cannot hold that the foreclosure sale should be set aside for a failure to comply with section 51.002(d) of the Texas Property Code.

### 3. Ownership of the Note and Deed of Trust

For the first time in their motion for summary judgment, Plaintiffs appear to argue that the foreclosure sale should be set aside because there is "questionable ownership" of the Note and Deed of Trust. (Pls.' MSJ ¶¶ 10-12.) Specifically, Plaintiffs argue that Bank of America

cannot establish that it is the holder of the Note or that it has been validly assigned the Deed of Trust. (Pls.' MSJ ¶¶ 10-12.)

### a. Whether Bank of America Holds the Note

Under Texas law, a holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE § 1.201(b)(21)(A). "A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. BUS. & COM. CODE § 3.201 cmt. 1). An instrument that is indorsed in blank is "payable to bearer and may be negotiated by transfer of possession alone." TEX. BUS. & COM. CODE § 3.205(b).

Here, Bank of America has produced a copy of the Note showing that the Note has been indorsed in blank by the original lender, Countrywide Home Loans, Inc. (Defs.' MSJ, Ex. A-1.) Bank of America has also produced evidence demonstrating that it is in possession of the original Note.[14]

Plaintiffs nonetheless argue that Bank of America cannot show that it is the holder of the Note because Bank of America has not supplied the original Note to Bank of America's own counsel or shown the original Note to Plaintiffs' counsel for inspection. However, Plaintiffs' argument is insufficient to survive summary judgment for at least two reasons. First, the Fifth Circuit has recognized that the "original, signed note need not be produced in order to foreclose." *Martins v. BAC Home Loans Servicing, L.P.*, --- F.3d ---, 2013 WL

---

[14] Specifically, Ms. Bartholomew states in her declaration that Bank of America is in possession of the original Note. (Defs.' MSJ, Ex. A ¶ 7.) Plaintiffs have not produced competent summary judgment evidence controverting Ms. Bartholomew's testimony or even argued that her testimony is untrue.

3213633, at *2 (5th Cir. 2013). Second, Bank of America has indicated that defense counsel recently received the original Note from Bank of America and that the Note is available for inspection. (*See* Defs.' Reply ¶ 14.) Plaintiffs have not filed anything with the Court indicating that defense counsel's statement is inaccurate and, pursuant to Rule 11(b), defense counsel has certified that his statement has evidentiary support. Accordingly, the record conclusively establishes that Bank of America is the holder of the Note.

### b. Whether Bank of America Has Been Validly Assigned the Deed of Trust

Plaintiffs argue that a lawsuit pending in the United States District Court for the Northern District of Texas, styled *Dallas County, Texas et al. v. MERSCORP, Inc., et al.*, No. 3:11-CV-2733-O, "puts into question [Bank of America]'s and MERS' practices and procedures in transferring or attempting to transfer lien and debt instruments." (Pls.' MSJ ¶ 12.) Plaintiffs therefore argue that the "viability and genuineness" of the Assignment in this case, which was executed by MERS, is "in doubt and is not established." (Pls.' MSJ ¶ 12.)

However, Plaintiffs do not explain how or why the *Dallas County* case would void or invalidate the Assignment at issue in this case.[15] Indeed, since the *Dallas County* case was filed in September of 2011, both federal and Texas state courts have continued to recognize the validity of MERS assignments. *See, e.g.*, *Martins*, --- F.3d ---, 2013 WL 3213633, at *2-4; *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, no pet. h.); *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *5 (Tex. App.—Austin May 18, 2012, pet. denied).

---

[15] In *Dallas County*, the plaintiffs seek, among other relief, an order requiring the defendants to correct allegedly false filings of mortgage assignments and a damage award to compensate the plaintiffs for a loss of recording fee revenue and damages to statutory indexes maintained by the plaintiffs. As of the date of this Order, the parties in *Dallas County* are engaged in settlement discussions.

Furthermore, in this case, it is irrelevant whether the Deed of Trust was validly assigned because the evidence conclusively shows that Bank of America holds the Note and, under Texas law, "the mortgage follows the note." *Kiggundu v. Mortg. Elec. Registration Sys. Inc.,* 469 F. App'x 330, 332 (5th Cir. 2012) (citing *Lawson v. Gibbs,* 591 S.W.2d 292, 294 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.)). Accordingly, Plaintiffs' challenges to the Assignment fail as a matter of law and cannot serve as a basis to set aside the foreclosure sale.

**4. Conclusion**

In light of the foregoing discussion, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' cause of action to set aside the trustee's sale.

**B. Breach of the Duty of Good Faith and Fair Dealing**

Under Texas law, "a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Fed. Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708-09 (Tex. 1990). "The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith." *Id.* at 709.

Plaintiffs appear to concede that a duty of good faith and fair dealing generally does not exist between a mortgagor and a mortgagee under Texas law. However, Plaintiffs argue that a duty of good faith and fair dealing exists in this case because: (1) federal common law, rather than Texas state law, should apply because mortgage loans are "entwined with federal mortgage underwriting and federal mortgage relief programs," because the Note and Deed of Trust are on FNMA uniform instrument forms, because Bank of America and FNMA are "national or federally-created" organizations, and because Bank of America and FNMA

recently agreed to a multi-billion dollar settlement amongst themselves; (2) Bank of America's acceptance of the $992.22 check that Plaintiffs tendered on May 31, 2011 imposed on Bank of America the duty to proceed in good faith; and (3) a special relationship exists between Plaintiffs and Bank of America in this case under Texas law. (*See* Pls.' Resp. ¶¶ 12-19.)

Plaintiffs do not cite any case law in support of their argument that federal common law, rather than Texas law, should apply to the Note and Deed of Trust at issue in this case. Rather, Plaintiffs merely cite a section of American Jurisprudence that talks generally about federal common law.[16] Furthermore, there is no indication that either party intended the Note or Deed of Trust to be governed by federal law at the time they were executed. Accordingly, Plaintiffs' argument lacks merit.

Plaintiffs also argue that a duty of good faith and fair dealing has been created in this case by contract because Bank of America accepted the $992.22 payment that Plaintiffs tendered on May 31, 2011. Plaintiffs' argument relies on the following portions of Plaintiffs' counsel's May 31, 2011 letter to Bank of America:

> Enclosed please find our Trust Acct. check in the amount of $992.22 (requested minimum payment and unpaid portion of prior payment), along with an undated "Important Notice" my clients received from you, which is

---

[16] Specifically, Plaintiffs quote the following passage:

> Despite the rule that federal courts in diversity cases must apply state substantive law, the federal courts have continued to apply federal law as to substantive matters in transactions substantially involving the interests or obligations of the federal government or its instrumentalities, even when the United States is not a party, or jurisdiction rests on diversity of citizenship, or the exercise of a federal power is not directly involved. To this extent it may be said that despite pronouncements to the contrary, there is a sphere in which a federal common law exists. Where there is an overriding federal interest in the need for a uniform rule of decision, or where the controversy touches the basic interest of federalism, the United States Supreme Court will fashion federal common law. A federal statute dealing with a general subject is a prime repository of federal policy on the subject and a starting point for ascertaining the federal common law.

(Pls.' Resp. ¶ 14) (quoting 15A Am. Jur. 2d Common Law § 5).

> tendered in a good faith effort to convince you, Bank of America, ("you") that
> my clients, Phillipe and Kimberly Ayres, are making a good faith attempt to
> settle the disputes with you and bring the referenced loan acct. current. Your
> acceptance of the tendered payment will confirm your agreement to work in
> good faith with my clients in their attempt to settle the above referenced
> account.
>
> ....
>
> This is my clients['] final attempt at resolving this matter without
> litigation. I have already advised them that they would be better off using a
> portion of their escrowed funds for much more personally gratifying matters
> and the balance for Attorney's fees for a lawsuit against you to set aside any
> threatened or completed foreclosure sale of their homestead.

(*See* Pls.' Resp. ¶¶ 15-16.) However, Plaintiffs' argument that Bank of America's acceptance of the $992.22 payment created a new contract, which thereby imposed on Bank of America the duty to act in good faith, fails because Plaintiffs were merely tendering an amount that they already owed to Bank of America under the Note. *See McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 93 (5th Cir. 1995) ("In general, under the pre-existing duty rule, an agreement to do what one is already bound to do cannot serve as sufficient consideration to support a supplemental contract or modification." (internal quotation marks omitted)). In their response to Defendants' motion for summary judgment, Plaintiffs appear to argue that there was sufficient consideration to support a new contract because the letter stated that the payment was "tendered in a good faith effort to . . . settle the disputes." (Pls.' Resp. ¶ 15.) However, Plaintiffs' argument is unpersuasive because the plain language of the letter clearly states that the $992.22 payment constituted the "requested minimum payment and unpaid portion of prior payment." Accordingly, the Court holds that Bank of America's acceptance of the $992.22 payment did not impose on Bank of America a duty of good faith and fair dealing.

Plaintiffs also argue that a special relationship exists between themselves and Bank of America in this case because there is an imbalance of bargaining power and a "likelihood of abuse by the more powerful" Bank of America. (Pls.' Resp. ¶ 19.) In support of their argument, Plaintiffs cite *Casey v. Federal Home Loan Mortgage Ass'n*, No. 4:11-CV-3830, 2012 WL 1425138 (S.D. Tex. Apr. 23, 2012), in which the district court denied the defendants' motion to dismiss the mortgagor-plaintiffs' cause of action for breach of the duty of good faith and fair dealing. In reaching its holding, the district court found that there was plausibly a "special relationship due to an imbalance in bargaining power" between the mortgagor-plaintiffs and the defendants based on the plaintiffs' allegations that the defendants "transacted thousands of modifications of home loans, and were more knowledgeable of the process, the options and dangers than [the plaintiffs]." *Id.* at *9. However, the *Casey* opinion does not compel a holding that a special relationship exists in this case for at least two reasons. First, the district court in *Casey* subsequently granted summary judgment in favor of the defendants on the good faith claim after finding that the plaintiffs had failed to raise a genuine dispute as to the existence of a duty of good faith and fair dealing. *Casey*, 4:11-CV-3830, ECF No. 36 at 22 (S.D. Tex. Apr. 10, 2013), *rec. adopted*, ECF No. 37 (Apr. 30, 2013). Second, both the Fifth Circuit and the Texas Supreme Court have generally declined to recognize a special relationship between a mortgagor and a mortgagee. *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) (holding that, under Texas law, a special relationship "does not generally exist between a mortgagor and mortgagee"); *Fed. Deposit Ins. Corp.*, 795 S.W.2d at 709. This Court finds no reason to depart from established precedent in this case.

Defendants are entitled to summary judgment on Plaintiffs' cause of action for breach of the duty of good faith and fair dealing.

## C. Negligent Misrepresentation

In their petition, Plaintiffs assert a cause of action for negligent misrepresentation. Plaintiffs allege the following in support of their claim:

> Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest, and . . . such information was supplied by Defendants for the guidance of Plaintiffs in the transactions described herein. Defendants failed to exercise reasonable care or competence in obtaining or communicating such information. Plaintiffs suffered pecuniary loss, which was proximately caused by Plaintiffs' justifiable reliance on such information.

(Pet. ¶ 33.) Plaintiffs assert that they are afforded a cause of action for negligent misrepresentation pursuant to *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991). (Pet. ¶ 33.)

As held in *Sloane*, the elements of a cause of action for negligent misrepresentation are the following:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

825 S.W.2d at 442. "To establish a negligent misrepresentation claim, the plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App.—Houston [1st. Dist.] 2007, no pet.).

In their motion for summary judgment, Defendants assert that they are entitled to summary judgment on Plaintiffs' negligent misrepresentation claim because there is no evidence in the record that Defendants made any false representations. Plaintiffs have not controverted Defendants' assertion by pointing to any evidence in the record or by setting forth any specific factual allegations in support of their claim.[17] Accordingly, Defendants are entitled to summary judgment on the negligent misrepresentation claim on that basis alone. *See Celotex*, 477 U.S. at 325 (holding that a party moving for summary judgment may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case"); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam) (holding that once the movant carries its initial burden, a party opposing summary judgment "must set forth specific facts" to show the existence of a genuine dispute).

Furthermore, even when most liberally construing Plaintiffs' filings, the Court finds that Plaintiffs have failed to establish a claim for negligent misrepresentation that can withstand summary judgment. Throughout their motion for summary judgment and briefs, the Court can discern four specific representations about which Plaintiffs complain: (1) a representation made by Bank of America in its August 22, 2011 letter; (2) a representation made by Bank of America in its October 19, 2011 letter; (3) an assurance, made sometime in August of 2010, that Plaintiffs fit within the guidelines for a reduction of interest rate and a loan modification; and (4) an assertion by FNMA that it owned the Property when Plaintiffs contend that FNMA did not. As the Court will explain, none of these representations can support liability for a claim of negligent misrepresentation.

---

[17] Indeed, Plaintiffs do not address their negligent misrepresentation claim at all in their motion for summary judgment or briefs.

Plaintiffs take issue with the letter that Bank of America sent them on August 22, 2011. Plaintiffs contend that the August 22, 2011 letter "promised what Plaintiffs believed would be a favorable permanent mortgage loan agreement in the mail within 30 days." (Pls.' Resp. ¶ 23) (internal quotation marks omitted). Plaintiffs implicitly argue that the August 22 letter was a misrepresentation because they did not receive a permanent modification agreement until nearly six weeks after the promised date and the proposed modification agreement that they received was unfavorable to them and was offered on a "take it or leave it basis." (Pls.' Resp. ¶ 23.) However, Plaintiffs' complaints about the August 22 letter do not support a cause of action for negligent misrepresentation for at least two reasons. First, a promise to deliver a modification agreement by a certain date, like any promise of future conduct, cannot support a cause of action for negligent misrepresentation. Second, even if a false promise could support a claim for negligent misrepresentation, Defendants would be entitled to summary judgment because Plaintiffs have not shown that the August 22 letter contained a false promise. Contrary to Plaintiffs' assertion, the August 22 letter merely stated that Plaintiffs "should" be receiving a modification agreement within thirty days; it did not state that Plaintiffs necessarily "would" be receiving a modification agreement within that time. Furthermore, although Plaintiffs may have understandably hoped that the modification agreement would be favorable to them, the August 22 letter did not indicate the nature of any terms that could be expected in the proposed agreement.[18]

---

[18] Plaintiffs also complain that the August 22, 2011 letter stated that a foreclosure sale of the Property had been scheduled for September 6, 2011, which was less than thirty days away from the date of the letter. Plaintiffs assert that the letter's "threat of foreclosure during the 30[-]day period within which the promised loan modification agreement was promised [sic] was either negligent or an intentional infliction of emotional distress." (Pls.' Resp. ¶ 22.) It is unclear whether Plaintiffs intended for this assertion to serve as a basis for their negligent misrepresentation claim. Regardless, Defendants would be entitled to summary judgment on the claim. The letter's statement regarding the scheduled foreclosure sale cannot serve as the basis for a negligent

Plaintiffs also take issue with the letter that Bank of America sent them on October 19, 2011, which informed them that they could work in-person with a Bank of America mortgage counselor in San Antonio. Plaintiffs argue that the "offer . . . was illusory" because "within eight days the Plaintiffs were told not to deal with the San Antonio Office." (Pls.' Resp. ¶ 23.) However, Plaintiffs' argument appears to lack evidentiary support. To support their contention that they were subsequently "told not to deal with the San Antonio Office," Plaintiffs rely on the October 27, 2011 letter from Bank of America informing them that Elaine Petrey had been assigned as their customer relationship manager. However, the October 27, 2011 letter does not state or imply that Plaintiffs no longer had the opportunity to contact the local Customer Assistance Center in San Antonio, that Ms. Petrey had become Plaintiffs' exclusive contact at Bank of America, or that the options set forth in the October 19, 2011 letter were otherwise no longer available. Indeed, Plaintiffs have not provided any evidence that they attempted to schedule an in-person meeting with a mortgage counselor after October 27 and were denied access. Moreover, the October 19, 2011 letter cannot support Plaintiffs' negligent misrepresentation claim because there is no evidence that any statement made in the letter misrepresented an existing fact.

Plaintiffs also assert in their motion for summary judgment and briefs, and Plaintiff Phillipe Ayres attests in his affidavit, that Plaintiffs were "assured they fit within the guidelines for a reduction of interest rate and restructuring of their loan" but that such relief was never forthcoming. (*See* Pls.' MSJ ¶ 14(b); Pls.' Resp. ¶ 16; Aff. of Phillipe Ayres ¶ 9.) However, Plaintiffs have not specifically alleged, let alone pointed to any evidence in the

---

misrepresentation claim because there is no indication that the statement was a misrepresentation of any existing fact. Similarly, even if Plaintiffs intended for their allegations of "numerous foreclosure postings" to serve as a basis for their negligent misrepresentation claim, Defendants would be entitled to summary judgment because there is no evidence, or even any assertion, that the alleged postings were misrepresentations of existing facts.

record establishing, how the assurance was made or by whom. Nor have Plaintiffs provided any evidence establishing that this statement was false at the time it was made.

Plaintiffs further contend that FNMA is responsible for posting a notice on the Property "falsely stating that the property was owned by FNMA when it was not." (Pls.' MSJ ¶ 20.) However, even if the post were false, it cannot support Plaintiffs' negligent misrepresentation claim because Plaintiffs have not adduced competent summary judgment evidence demonstrating that they suffered pecuniary loss by relying on the notice. Indeed, rather than relying on the notice, Plaintiff Phillipe Ayres testified that when he received the notice he asked his attorney to send a cease and desist letter to FNMA's representative. (Aff. of Phillipe Ayres ¶ 3.)

Finally, the Court notes that Plaintiffs have failed to adduce evidence demonstrating that any of the aforementioned representations were made for the guidance of others in a business or that either Bank of America or FNMA failed to exercise reasonable care or competence in obtaining or communicating the information. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' cause of action for negligent misrepresentation.

**D. Intentional Infliction of Emotional Distress**

Plaintiffs assert a cause of action for intentional infliction of emotional distress. In support of their claim, Plaintiffs contend that Bank of America's "course of outrageous conduct was extreme and the proximate cause of severe emotional distress to the Plaintiffs. The apparent purpose of such outrageous conduct could have only been to encourage

Plaintiffs to leave their home and give up trying to get proper financial attention by their mortgagee's loan servicer." (Pet. ¶ 37.)

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: "1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam) (internal quotation marks omitted). "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Texas courts have found legally sufficient evidence to support a finding of severe emotional distress in cases where the plaintiffs produced evidence demonstrating that they experienced a variety of emotional problems, sought medical treatment and were prescribed medication to alleviate the problems, and suffered from post-traumatic stress disorder, *id.* at 618-19, where a plaintiff demonstrated that she suffered from an ulcer, felt worthless and ashamed, ground her teeth so hard that some cracked, and suffered from post-traumatic stress disorder, *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied), where a plaintiff produced evidence showing that she suffered anxiety, depression, anger problems, marital discord, headaches, gastrointestinal difficulties, sleep disturbances, weakness, and fatigue, *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pet. denied), and where a plaintiff produced

evidence that she often cried, had experienced a general change in her demeanor and personality, and was suffering from depression and post-traumatic stress disorder, *Ross v. Ross*, No. 03-02-00771-CV, 2004 WL 792317, at *10 (Tex. App.—Austin Apr. 15, 2004, no pet.) (mem. op.).

Here, Plaintiffs have not produced any evidence demonstrating that they are suffering from the severe degree of emotional distress that is necessary to support a cause of action for intentional infliction of emotional distress under Texas law.[19] Alternatively, federal courts in Texas have rejected claims for intentional infliction of emotional distress in the mortgage foreclosure context concluding that the conduct was not "extreme and outrageous" as a matter of law. *See Auriti v. Wells Fargo Bank, N.A.*, No. 3:12-CV-334, 2013 WL 2417832, at *8-9 (S.D. Tex. June 3, 2013); *Strange v. Flagstar Bank, FSB*, No. 3:11–CV–2642–B, 2012 WL 987584, at *5 (N.D. Tex. Mar. 22, 2012) ("Plaintiffs' allegations centering on foreclosure and contract issues are far from the type of allegations of outrageous and intolerable conduct required to sustain a claim for intentional infliction of emotional distress."). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' cause of action for intentional infliction of emotional distress.

## E. Common Law Fraud

Plaintiffs' petition asserts a cause of action for common law fraud. In connection with their fraud claim, Plaintiffs assert that "Defendants made material false representations to Plaintiffs with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiffs, and that Plaintiffs relied on

---

[19] In his affidavit, Phillipe Ayres does state that "[t]he emotional distress [that Bank of America's conduct] has caused my wife and me is outrageous." (Aff. of Phillipe Ayres ¶ 11.) However, Mr. Ayres's statement is conclusory and therefore insufficient to withstand summary judgment. *See Freeman*, 369 F.3d at 860.

these representations to their detriment." (Pet. ¶ 28.) Plaintiffs further contend that "Defendants concealed or failed to disclose material facts within the knowledge of Defendants, that Defendants knew that Plaintiffs did not have knowledge of same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Plaintiffs to enter into the transaction made the basis of this suit by such concealment or failure to disclose." (Pet. ¶ 29.) Plaintiffs do not address their fraud claim in their motion for summary judgment or briefs.

"The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (per curiam).

In their petition, motion for summary judgment, and briefs, Plaintiffs have not enumerated a specific misrepresentation or omission on which their fraud claim is based. Even if the Court were to assume that a false representation was made, Plaintiffs have not pointed to any evidence in the record demonstrating that either Defendant made the representation with knowledge that it was false and with the intent that Plaintiffs rely on it. Nor have Plaintiffs pointed to any evidence of an injury that they suffered in reliance on a

misrepresentation. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' fraud claim.[20]

## F. Fraud in a Real Estate Transaction

Plaintiffs assert a cause of action for fraud in a real estate transaction under section 27.01 of the Texas Business and Commerce Code. (Pet. ¶ 31.) Plaintiffs do not allege any specific facts in support of their claim in their petition and do not address the claim at all in their briefs.

Section 27.01 of the Texas Business and Commerce Code provides the following:

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
    (1) false representation of a past or existing material fact, when the false representation is
        (A) made to a person for the purpose of inducing that person to enter into a contract; and
        (B) relied on by that person in entering into that contract; or
    (2) false promise to do an act, when the false promise is
        (A) material;
        (B) made with the intention of not fulfilling it;
        (C) made to a person for the purpose of inducing that person to enter into a contract; and
        (D) relied on by that person in entering into that contract.

TEX. BUS. & COM. CODE § 27.01(a). "Section 27.01 only applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied). "A loan transaction, even if secured by land, is not considered to come under the statute."

---

[20] The Court recognizes that in *Auriti*, 2013 WL 2417832, the district court refused to dismiss the plaintiff's fraud claim that was based on the allegation that the defendants had misled her into believing that she would receive a loan modification. However, *Auriti* is distinguishable from this case because the district court in *Auriti* was considering a motion to dismiss rather a motion for summary judgment, the plaintiff had alleged that she was denied a loan modification, and the district court found that the plaintiff had made sufficiently precise factual allegations of reliance and injury. *See id.* at *4.

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (quoting *Burleson State*

*Bank*, 27 S.W.3d at 611).

Here, Defendants are entitled to summary judgment on Plaintiffs' cause of action for

fraud in a real estate transaction because Plaintiffs have not alleged or pointed to any evidence

demonstrating that either Defendant induced them to enter into a contract involving stock or

real estate.

**G. Deceptive Trade Practices**

Plaintiffs assert a cause of action against both Defendants under the Texas Deceptive

Trade Practices—Consumer Protection Act ("DTPA").[21] Specifically, Plaintiffs assert that

"Defendants engaged in an 'unconscionable action or course of action' to the detriment of

Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce

Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of

Plaintiff [sic] to a grossly unfair degree." (Pet. ¶ 26.)

To maintain an action under the DTPA, a plaintiff must establish that: "(1) the plaintiff

is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these

acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater*

*Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).

The DTPA defines a "consumer" as one who seeks or acquires, by purchase or lease, any

goods or services. TEX. BUS. & COM. CODE § 17.45(4). The Texas Supreme Court has held

that a plaintiff seeking the extension of credit or to borrow money is not seeking to acquire a

good or service as defined by the DTPA. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174

(Tex. 1980). This Court has also recognized that, under Texas law, a plaintiff who seeks a

---

[21] The DTPA is codified at sections 17.41-17.63 of the Texas Business and Commerce Code.

loan modification and receives free services from the loan owner or servicer in connection with the modification is not a consumer under the DTPA. *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 580 (W.D. Tex. Mar. 30, 2012).

Here, Plaintiffs have not established that they are consumers under the DTPA because they have not shown that they were seeking "by purchase or lease" any services apart from a loan modification or the extension of credit. Nor have Plaintiffs set forth any specific facts or evidence in support of their claim. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' DTPA claim.

**H. Claim for Negligent Hiring, Supervision, and Management**

In their petition, Plaintiffs assert that Bank of America and FNMA "owed a duty to clients and customers, including Plaintiffs, to exercise ordinary care in the hiring of competent employees, and in the supervision and management of their employees." (Pet. ¶ 35.) Plaintiffs argue that Bank of America and FNMA "failed to use ordinary care in these respects, including but not limited to failing to properly investigate potential job applicants, failing to properly supervise their personnel, failing to implement adequate safeguards to prevent the situation that resulted in Plaintiffs' damages, and failing to provide adequate oversight for such employees." (Pet. ¶ 36.) Plaintiffs argue that "[t]hese conditions created an environment in which misrepresentations to clients and customers were likely and reasonably foreseeable to occur, and which in fact did occur." (Pet. ¶ 36.)

Under Texas law, a negligent hiring claim "requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam). "To

prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A plaintiff must show that the "employer's failure to investigate, screen, or supervise its [hirees] proximately caused the injuries" that the plaintiff alleges. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (internal quotation marks omitted) (alteration in original). Thus, in light of these cases, a negligent hiring and management claim in Texas requires a plaintiff to establish that: (1) an employee of the defendant committed an actionable tort against the plaintiff, (2) the plaintiff suffered damages as a result of the employee's foreseeable misconduct, (3) the employer was negligent in hiring or supervising the employee, and (4) the employee's misconduct would not have occurred but for the employer's negligence.

As has been explained in this opinion, Plaintiffs have failed to establish that any employee of either Defendant committed an actionable tort against Plaintiffs. Furthermore, Plaintiffs have not adduced competent summary judgment evidence of any damages that they suffered from an employee's foreseeable misconduct or of any negligent hiring or supervisory practices. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' cause of action for negligent hiring, supervision and management.

### IV. Conclusion

It is understandable how Plaintiffs became frustrated by Bank of America's bureaucratic responses in dealing with their issue.  Nevertheless, Plaintiffs fail to establish that Bank of America violated any legal duties owed to them.

34

Defendants' Motion for Summary Judgment (Doc. No. 19) is GRANTED and Plaintiffs' Motion for Summary Judgment and for Judgment on the Pleadings (Doc. No. 17) is DENIED.

The Clerk is directed to enter judgment that Plaintiffs take nothing on their claims. Defendants are awarded their costs of court and should Defendants wish to pursue such costs, a Bill of Costs must be filed within fourteen days of the entry of judgment pursuant to Local Rule CV-54.

SIGNED this 29th day of July, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE